**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ZOLLER LABORATORIES, LLC,
a Utah limited liability company,

       Plaintiff-Counter-
       Defendant-Appellant,

v.

NBTY, INC., a New York corporation;
NATURE'S BOUNTY, INC.,
a New York corporation,

       Defendants-Counter-
       Claimants-Appellees.

No. 03-4252
(D.C. No. 2:03-CV-578-TC)
(D. Utah)

---

**ORDER AND JUDGMENT** [*]

---

Before **McCONNELL** , **HOLLOWAY** , and **PORFILIO** , Circuit Judges.

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument.

Plaintiff Zoller Laboratories, L.L.C., appeals the district court's denial of its request for a preliminary injunction against defendants NBTY, Inc. and Nature's Bounty, Inc. (collectively, NBTY).  Zoller, which markets a weight-loss dietary supplement called Zantrex™-3 (Zantrex-3), filed a trademark infringement and false advertising complaint under 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act against NBTY, which markets a competing weight-loss dietary supplement called Xtreme Lean™ ZN-3 (ZN-3).  We have jurisdiction under 28 U.S.C. § 1292(a)(1).  We conclude that the district court did not abuse its discretion in denying Zoller's request for a preliminary injunction.

## I.  BACKGROUND

NBTY's advertising for its ZN-3 product includes the statement, "Compare to the Ingredients of Zantrex-3."  Aplt. App. at 25-27.  This statement is printed in a starburst design on all bottles of ZN-3, and on NBTY's promotional advertising, point-of-purchase display cases, and internet website.  Zoller contends this "Compare to the Ingredients" statement has only one possible, plainly-obvious meaning:  that the two products are identical, and that ZN-3 is a cheaper equivalent to Zantrex-3.  Zoller contends the two products are not the same, and therefore, the "compare to" statement is false.

-2-

A comparison of the two products' labels indicates that there are some similarities between the products.[1] Both claim to be ephreda-free dietary supplements that promote increased energy levels and facilitate weight loss. The description of ingredients on both products list the same principal ingredients: Niacin, Yerba Mate, Guarana, Damiana, Schizonepeta, Green Tea, White Pepper, Tibetan Ginseng, Panax Ginseng, Maca Root, Cocoa Nut, Kola Nut, Thea Sinensis, and Caffeine. (The order and spelling of some ingredients differ slightly.) *See* Aplt. App. at 124, 125; Supp. Aplee. App., Ex. B and C. Neither product lists the actual amounts of these ingredients on its label, except for caffeine and niacin.

A comparison of the labels also indicates that there are differences in the two products. The products differ in the amount of caffeine and niacin: Zantrex-3 has 30 mg of niacin and 300 mg of caffeine per two-capsule serving, whereas ZN-3 has 25 mg of niacin and 160 mg of caffeine per one-capsule serving. Zantrex-3 lists rice flour as its other ingredient; ZN-3 lists gelatin, rice powder, vegetable magnesium stearate, silica, and titanium dioxide color as its other ingredients. The label on Zantrex-3 recommends the consumer take

---

[1] Zoller's opening brief includes a copy of its product's label that is slightly different from the label of its product bottle introduced into evidence during the district court proceedings. We refer to, and rely upon, only the evidence before the district court.

two capsules, which contain 1312 mg of its "proprietary blend" of ingredients, fifteen to thirty minutes before "main meals." Supp. Aplee. App., at Ex. B. The label on ZN-3 recommends the consumer take one capsule, which contains 656 mg of its "proprietary blend" of ingredients, up to three times a day with meals. The price of a bottle of ZN-3 at Wal-Mart is $14.43 (for ninety capsules of 656 mg each); the nationally advertised price for a bottle of Zantrex-3 is $49.00 (for eighty-four capsules of 681 mg each). At the time of the district court's hearing and decision, ZN-3 was sold in Wal-Mart, but Zantrex-3 was not.

Zoller claims that there are important differences in the formulation and composition between the blend of active ingredients in the two products, though it presented no evidence in support of its claim. NBTY admits that there are "important differences between the formulation and composition" of Zantrex-3 and ZN-3, "including the relative per-serving concentration of caffeine," which can be readily learned by comparing the labels. Aplt. App. at 36-37. NBTY states, however, that it lacks the knowledge or information to evaluate whether there are other differences between the products, because both products contain proprietary and confidential blends of ingredients that have not been disclosed. *Id.* at 37.

Zoller argues, however, that as a result of these differences in blend composition, the "Compare to the Ingredients" statement on ZN-3 bottles and

-4-

advertising is literally false by necessary implication, and, therefore, violates the Lanham Act's prohibition on false advertising. Zoller requested the district court enter a preliminary injunction precluding NBTY from any further marketing of ZN-3, and to order NBTY to immediately recall the entire ZN-3 product line and order a corrective re-labeling of all the ZN-3 products and advertising materials.

## II. ANALYSIS

### *Preliminary Injunction Criteria and Standard of Review*

The criteria for granting a preliminary injunction in a false advertising suit are the same as for any other case: A court will grant a preliminary injunction if a plaintiff shows:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

*Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001). Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal. *Id*.

The district court denied Zoller's preliminary injunction request. It first concluded that Zoller was not likely to succeed on the merits, finding that the "Compare to Ingredients" statement was not literally false by necessary implication, because the statement does not unambiguously convey a false

-5-

message.  The district court then concluded that Zoller had failed to demonstrate that it would suffer irreparable injury absent an injunction, that any injury to Zoller absent an injunction would outweigh the harm to NBTY if it did grant the injunction, or that public interest favored an injunction.

On appeal, Zoller contends the district court erred in determining no likelihood of success on the merits, and in applying the standard for injunctive relief.  "We review the district court's decision to deny a preliminary injunction for abuse of discretion."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).  "In doing so, we examine the district court's factual findings for clear error and review its legal determinations de novo."  *Id*.

### A.  *Likelihood of Success on the Merits*

### 1.  *Elements of False Advertising Claim*

"The Lanham Act prohibits the 'false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'"  *Scotts Co. v. United Indus. Corp*., 315 F.3d 264, 272 (4th Cir. 2002) (quoting 15 U.S.C.A. § 1125(a)(1)(B)).  To succeed on the merits, Zoller must establish that:

> (1) [NBTY] made a false or misleading description of fact or
> representation of fact in a commercial advertisement about [its] own

or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) [NBTY] placed the false or misleading statement in interstate commerce; and (5) [Zoller] has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Id.* (citing cases).

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Scotts Co.*, 315 F.3d at 273 (quotation omitted). "If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997) (quotation omitted). If, however, "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers." *Scotts Co.*, 315 F.3d at 273 (quotation omitted, alteration in original). Zoller has presented no consumer survey data or other extrinsic evidence, and has explicitly stated that its

only contention at the preliminary injunction stage is that NBTY's "Compare to the Ingredients of Zantrex-3" statement is literally false. Aplt. App. at 226-27. [2]

## 2. *Literally False by Necessary Implication*

"Although factfinders usually base literal falsity determinations upon the explicit claims made by an advertisement, they may also consider any claims the advertisement conveys by 'necessary implication.'" *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000). A literally false "claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id*. at 35. "[W]hen a Court considers whether a message is necessarily implied from the product's name and advertising, it must determine whether the false message will necessarily and unavoidably be received by the consumer." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 588 (3d Cir. 2002). "Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998).

---

[2] In many instances, Zoller cites to decisions that involve legal standards relevant to implied falsehood claims, not to claims of literal falsity. These decisions are not relevant to the issues in this appeal.

Zoller argues that the "Compare to the Ingredients of Zantrex-3" statement on ZN-3's labels and advertisements is literally false by necessary implication. It contends a consumer seeing the "Compare to the Ingredients" statement would necessarily and unavoidably conclude that the active ingredients in ZN-3 are identical and are in the same amounts or concentration as the ingredients in Zantrex-3, and that ZN-3 is a cheaper equivalent of Zantrex-3.

"Whether an advertisement is literally false is an issue of fact." *C.B. Fleet Co.*, 131 F.3d at 434. Here, the district court rejected Zoller's argument, and found that, although consumers might interpret the statement as Zoller suggests, they might also interpret it differently. NBTY argued that a consumer could reasonably interpret the "Compare to the Ingredients" statement as meaning simply that the two products contain the same thirteen key, or active, ingredients. The court agreed:

> [W]hen consumers compare the two labels, they do find that the thirteen ingredients in each product's "proprietary blend" are nearly identical . . . . To that extent, [NBTY's] proposed reading of the "compare to" language is entirely truthful. Furthermore, the idea that the two products are precisely the same . . . is undercut by differences that can be ascertained when a consumer looks to the two products' labels in comparison. As discussed above, the Zantrex-3 and ZN-3 contain different quantities of Niacin and different "other ingredients" . . . . More importantly, the two products list different dosage recommendations, and are accordingly to be used differently.

Aplt. App. at 211-12.

The district court also found that the "Compare to the Ingredients" statement could reasonably be interpreted as meaning that there are similarities between the two products or could mean simply what it says: that the consumer is invited to compare the ingredients. Given these possible different interpretations, the district court concluded that a consumer would not necessarily and unavoidably conclude from ZN-3's "Compare to the Ingredients" statement that ZN-3 and Zantrex-3 were identical. Therefore, the doctrine of literal falsity was inapplicable and Zoller had not established likelihood of success on the merits in order to support a preliminary injunction.

### 3. *Arguments on Appeal*

Zoller asserts numerous reasons why it believes the district court erred in rejecting its literal falsity by necessary implication theory. First, it argues the district court erroneously created a new rule that a statement cannot be literally false by necessary implication if there is a plausible, alternate interpretation of the statement. Zoller is mistaken. The district court applied the correct and well-established legal standard that a literally-false-by-necessary-implication claim must fail if the statement can reasonably be understood as conveying different messages. *See Scotts Co.*, 315 F.3d at 275-76; *see also Novartis Consumer Health, Inc.*, 290 F.3d at 586-87 ("[a] 'literally false' message may be either explicit or conveyed by necessary implication . . . . Regardless, only an

*unambiguous* message can be literally false.") (quotation and citation omitted); *Johnson & Johnson-Merck Consumer Pharm. Co*. *v. Procter & Gamble Co*., 285 F. Supp. 2d 389, 391 (S.D.N.Y. 2003) ("[A c]ourt may deem [a statement] false by necessary implication if it is susceptible to no more than one interpretation.").

Next, Zoller asserts that the alternative interpretations accepted by the district court are so convoluted that they simply are not supportable. We disagree. A district court's factual finding as to whether or not a particular statement is literally false by necessary implication is entitled to deference unless clearly erroneous. *See Scotts Co.*, 315 F.3d at 274; *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir. 2001). Zoller cites to decisions in which the district court did not find support for an alternative interpretation of the advertisement. Here, however, the district court found that NBTY's interpretation of the "Compare to the Ingredients" statement was at least plausible. "[A] factfinder might conclude that the message conveyed by a particular advertisement remains so balanced between several plausible meanings that the claim made by the advertisement is too uncertain to serve as the basis of a literal falsity claim . . . ." *Clorox Co.*, 228 F.3d at 35. We conclude the district court's finding that there is more than one reasonable interpretation of the "Compare to Ingredients" statement is not clearly erroneous.

Zoller then contends it was error for the district court to assume that a consumer could see the differences in the two products that are indicated on the ingredient labels because it improperly assumed that a consumer would always be able to make such a side-by-side comparison. We find no abuse of discretion. It is true that, when "assessing whether an advertisement is literally false, a court must analyze the message conveyed within its full context." *United Indus. Corp.*, 140 F.3d at 1180. Nothing in the district court's opinion, however, suggests that it failed to do so. The district court clearly understood that the products were not always sold at the same retail locations, and that NBTY's "Compare to Ingredients" statement was on its internet site and other advertising materials, and, therefore, that consumers would not always be able to make a side-by-side comparison of the products. Nevertheless, even in such instances, the "Compare to Ingredients" statement can still reasonably be read as simply informing the consumer that the two products have similar ingredients, which is true. The fact that a consumer might not make a side-by-side comparison does not mean that the consumer would necessarily and unavoidably conclude from the "Compare to the Ingredients" statement that the products were identical in all respects, as argued by Zoller. Further, we find no authority, and Zoller presents no relevant authority, for its assertion that it was somehow improper for the district court to make a side-by-side comparison of the two products.

Zoller argues that the district court ignored NBTY's advertising on its internet site and promotional advertising, which states, "Compare and Save!" Compare to the Ingredients of Zantrex-3." Aplt. App. at 27. The additional statement about cost saving, Zoller argues, compounds the "already obvious message" that ZN-3 and Zantrex-3 are identical and have the same effect on the body. Aplt. Opening Br. at 31. ZN-3 does cost less than Zantrex-3, and nothing about this additional statement alters our conclusion that the district court did not clearly err in finding that there are several reasonable interpretations of the "Compare to Ingredients" phrase.

Zoller's final likelihood-of-success argument is that the district court ignored undisputed evidence that the products were not the same, and that NBTY failed to prove the products were the same. This argument is neither factually nor legally correct. The district court accurately summarized the evidence before it, which is that Zoller claims there are important differences in the formulation and composition, and NBTY acknowledges differences in the per-serving concentration of caffeine, but lacks information about other possible differences. There is, in fact, no evidence in the record indicating what difference, if any, exists in the composition and formulation of the products' "proprietary blends." This is not NBTY's burden to demonstrate, but Zoller's. *See, e.g., Castrol, Inc. v. Quaker State Corp* ., 977 F.2d 57, 62 (2d Cir. 1992) (Lanham Act plaintiff seeking

injunctive relief bears burden of showing challenged advertisement is literally false to a "likelihood of success" standard).

In summary, we find no error in the district court's finding that NBTY's "Compare to the Ingredients" statement is not literally false. Because Zoller has not demonstrated a likelihood of success on the merits, the district court did not err in determining Zoller had not demonstrated its entitlement to a presumption of irreparable harm.

B. *Preliminary Injunction Standard*

The district court determined that Zoller was required to show that the injunctive relief factor "weigh[s] heavily and compellingly" in its favor because the relief sought would disturb the status quo, would be mandatory, instead of prohibitory, and would afford Zoller substantially all the relief sought at trial. *See Kikumura*, 242 F.3d at 955. Zoller contends the district court erred in applying this heightened compelling-evidence standard. Zoller argues it was not obligated to satisfy this standard because some of the relief it requested would not alter the status quo. It also argues that it met the compelling-evidence standard. Zoller contends, too, that it satisfied the other elements needed to obtain an injunction–irreparable injury, harm to plaintiff outweighs harm to defendant, and public interest favors a stay–and, therefore, the court should have applied a lesser standard than "likelihood of success," requiring only a showing that Zoller raised

questions going to the merits that are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation.    *Id*.

We find no error.  We are satisfied that Zoller met neither the heightened standard nor the general standard, nor did it satisfy even the relaxed "serious questions" standard with respect to the merits.  Given the failure to show a substantial likelihood of success on the merits and the absence of irreparable injury, the district court did not abuse its discretion in denying injunctive relief.

We AFFIRM the district court's denial of the requested preliminary injunction.

Entered for the Court


Michael W. McConnell
Circuit Judge