Even Rushton's comment that Nunes needed to consult her attorneys about whether she was "guilty of harassment" does not assert that Nunes committed criminal acts. Rushton posted the following on Nunes's public Facebook account:
Ask your attorneys if in your quest to investigate and have people rally around you if you are guilty of harassment. I think the answer is yes. My LDS mom and grandmother have seen all the posts today and do not feel you are acting in accordance to gospel guidelines or in a Christ-like manner.
Rushton's comment can certainly be read to express a legal opinion that Nunes was guilty of "harassment." But opinions about the legal significance of Nunes's actions, even opinions that are questionable, are not actionable as defamation. Moreover, the comment does not allege or imply that Nunes committed any specific criminal acts. This comment was posted in the context of a debate among individuals commenting about the copyright infringement of Nunes's novel and whether Nunes's efforts to obtain a copy of Rushton's novel were appropriate. In this setting, the reference to Nunes's "quest to investigate and have people rally around you" refers to Nunes's requests to reviewers to send her one of the advanced copies of The Auction Deal and her online efforts to sway the romance novel community to side with her in the dispute with Rushton. The facts implied by this comment are not criminal, nor are they false or defamatory.
In sum, terms such as "fraud" and "harassment" found in some of Rushton's online comments would have been understood to be "no more than rhetorical hyperbole." Greenbelt , 398 U.S. at 14, 90 S.Ct. 1537. Because Rushton did not make factual assertions of specific criminal conduct, these opinions cannot support defamation liability.
C. Statements of Fact
Rushton also published a handful of messages that contain false statements of fact. For example, Rushton wrote messages to book reviewers and bloggers claiming that Nunes had given her permission to use elements of A Bid for Love or that Nunes had co-written The Auction Deal with Rushton. Additionally, Rushton posted the following message: "Racheal [Nunes] feels threatened because I told *1233 her I would be contacting my aunt, Sheri Dew, and letting her know how she is handling the situation-through reviewers and not through the author. Deseret Book and Seagull Book are appalled at the way she is handling the situation."
Although these statements incorporate assertions of fact, they may support a defamation claim only if the asserted facts are defamatory. West , 872 P.2d at 1015 ("[I]f the underlying facts are not defamatory, an action for defamation is improper."). "Whether a statement is capable of sustaining a defamatory meaning is a question of law" that may be answered by a district court before submitting the case to a jury. Id. at 1008 ; SIRQ, Inc. v. The Layton Companies, Inc. , 379 P.3d 1237, 1245 (Utah 2016) ; O'Connor v. Burningham , 165 P.3d 1214, 1221 (Utah 2007). Moreover, when a district court determines whether a statement is susceptible to a defamatory meaning on summary judgment, it does not construe all factual inferences in favor of the nonmoving party, as it would in other cases. O'Connor , 165 P.3d at 1221-22. The First Amendment demands that the court "conduct a context-driven assessment of the alleged defamatory statement and reach an independent conclusion about the statement's susceptibility to a defamatory interpretation" without "indulging inferences in favor of the nonmoving party." Id. at 1222 ; accord West , 872 P.2d at 1009 n.15 (holding that resolving all ambiguities in an alleged defamatory statement in favor of the plaintiff "effectively eviscerates the court's responsibility to determine initially if the statement is defamatory as a matter of law").
"Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." West , 872 P.2d at 1008. "[I]n determining whether a particular statement fits within the rather broad definition of what may be considered defamatory, the guiding principle is the statement's tendency to injure a reputation in the eyes of its audience." Id. The fact that a plaintiff finds a statement to be "personally offensive ... does not render it defamatory." Id. at 1009. Furthermore a "publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff." Id. (citation omitted).
Under this standard, Rushton's false statements to reviewers that Nunes either authorized the use of elements of A Bid for Love or collaborated with Rushton in writing The Auction Deal are not susceptible to a defamatory meaning. Given that Nunes did not give Rushton permission to use elements of her book or collaborate with her, Nunes may very well have found these statements to be personally offensive. But such statements do not have a "tendency to injure a reputation in the eyes of its audience." See id. at 1008. Giving permission to use copyright material or collaborating with another writer does not expose an individual "to public hatred, contempt, or ridicule." See id. Therefore these statements cannot support Nunes's defamation claim.
Rushton's false claims that her aunt was the CEO of Desert Book and that Desert Book and Seagull Book disapproved of Nunes's actions are also not susceptible to a defamatory meaning. To state a claim for defamation, a plaintiff "must show that [the] defendant[ ] published ... statements concerning him [or her]." Id. at 1007. Although Rushton likely intended to intimidate Nunes with these false statements, they do not defame Nunes because they are not about her. The falsehoods concerned Ruston's familial relations and opinions held by two bookstore chains. Even if the statement that Desert *1234 Book and Seagull Book frowned on Nunes's actions indirectly concerned Nunes, it is not susceptible to a defamatory meaning. This statement may be nettlesome, but a falsehood concerning an opinion held by a third party is not sufficient to expose an individual to public hatred or ridicule.
D. Rushton's Communications to Nunes
Finally, Nunes points to a direct message Rushton sent her over the Goodreads website and an email Rushton sent to her as a basis for defamation liability. In the direct message and the email Rushton repeated her false claim about her relationship with Sheri Dew and accused Nunes of harassment. These electronic communications cannot support a claim for defamation because Rushton did not publish them to a third party. See DeBry v. Godbe , 992 P.2d 979, 985 (Utah 1999) ("The requirement of 'publication' means that the defamatory statement be communicated to a third person ....").
E. Conclusion
Because none of the online statements that Nunes relies upon can support a defamation claim, Rushton is entitled to summary judgment in her favor on this cause of action.
III. DEFAMATION PER SE
In addition to her defamation claim, Nunes asserts a separate cause of action for defamation per se based upon Rushton's online comments. Both Nunes and Rushton move for summary judgment on the defamation per se claim.
Because all of the statements made by Rushton were written, Nunes's cause of action is properly categorized as a libel per se claim. See Jacob v. Bezzant , 212 P.3d 535, 545 (Utah 2009). "Libel is classified per se if it contains 'defamatory words specifically directed at the person claiming injury, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious.' " Seegmiller v. KSL, Inc. , 626 P.2d 968, 977 n.7 (Utah 1981) (citation omitted). If a plaintiff can prove that a writing is defamatory per se because it is it is unmistakably injurious, he or she is relieved of the obligation to prove special damages. Id.
Although establishing that a written statement is libelous per se obviates the need to prove special damages, it does not eliminate constitutional limitations to defamation claims or otherwise modify the elements of a prima facie cause of action for defamation. As noted above, many of Rushton's statements are constitutionally protected opinions. The statements that do contain factual assertions are not capable of sustaining a defamatory meaning. Finally, other statements were not published. Thus, for all of the reasons that Rushton is entitled to summary judgment on the defamation claim, she is also entitled to summary judgment on the defamation per se claim.
IV. FALSE LIGHT
Next, Nunes asserts a false light claim based upon the same online statements. "A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed." Jacob v. Bezzant , 212 P.3d 535, 544 (Utah 2009).
A false light claim that is "predicated on publication of a defamatory *1235 statement" is subject to the same constitutional limitations as a defamation claim. SIRQ, Inc. v. The Layton Companies, Inc. , 379 P.3d 1237, 1245 (Utah 2016) (holding that the First Amendment requires a court to determine whether a statement is susceptible to a defamatory meaning when analyzing a false light claim); Jacob , 212 P.3d at 544 (noting that a "false light claim is closely allied with an action for defamation, and the same considerations apply to each" and disposing of defamation and false light claims on the same grounds, including that the statements were nonactionable opinions (citation omitted) ); see also Jensen v. Sawyers , 130 P.3d 325, 336 (Utah 2005) ("In reaching an accommodation consistent with freedom of speech, defamation has accumulated a considerable assortment of defenses, privileges, heightened burdens of proof, and particularized standards of review. The concern that claims like false light invasion of privacy with close ties to defamation might be prosecuted free of the First Amendment safeguards present in defamation actions has drawn the attention of both the drafters of the Restatements and this court."). In other words, a false light claim based upon an allegedly defamatory statement is subject to the same constitutional protections afforded to expressions of opinion and to statements that are not capable of sustaining a defamatory meaning. Moreover, a false light claim, like a defamation claim, requires publication.
Thus, Nunes's false light claim fails for the same reasons that her defamation claim fails. The online comments were all protected opinions, not capable of sustaining a defamatory meaning, or unpublished. Rushton, therefore, is entitled to summary judgment on the false light claim as well.
V. BUSINESS DISPARAGEMENT
Additionally, Nunes asserts a claim for business disparagement, also known as injurious falsehood. She alleges that the same online statements that support her defamation, defamation per se, and false light claims also damaged her business interests. In order for a plaintiff to recover on a business disparagement claim, she "must prove falsity of the statements made, malice, and special damages." Direct Import Buyers Ass'n v. KSL, Inc. , 538 P.2d 1040, 1042 (Utah 1975). A business disparagement claim "concerns statements regarding the quality of the plaintiff's product or the character of the plaintiff's business," and not "statements about an individual's reputation." Watkins v. Gen. Refractories Co. , 805 F.Supp. 911, 917 (D. Utah 1992) ; accord Direct Import Buyers , 538 P.2d at 1042 (holding that statements disparaging the quality of a plaintiff's product were properly analyzed under business disparagement rather than defamation).
Rushton disparaged the quality of Nunes's novels, giving them numerous one-star reviews and criticizing them for being "out of date" and "ridiculous." Because these negative reviews are statements of opinion that cannot be shown to be false, the first element of business disparagement cannot be proven. And to the extent that Nunes relies upon Rushton's other online comments to support her business disparagement claim, Nunes may not sidestep the constitutional limitations upon defamation claims by litigating liability for the statements under the auspices of a business disparagement claim. Cf. SIRQ, Inc. v. The Layton Companies, Inc. , 379 P.3d 1237, 1245 (Utah 2016) (constitutional limitations to defamations claims apply to false light claims); Jacob v. Bezzant , 212 P.3d 535, 544 (Utah 2009) (same); Jensen v. Sawyers , 130 P.3d 325, 336 (Utah 2005) (same). The court grants summary judgment in favor of Rushton on the business disparagement claim.
*1236 VI. TORTIOUS INTERFERENCE
Next, Nunes asserts a claim for tortious interference with business relations. "In order to win a tortious interference claim under Utah law, a plaintiff must ... prove '(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) ... by improper means, (3) causing injury to the plaintiff.' " Eldridge v. Johndrow , 345 P.3d 553, 565 (Utah 2015) (second alteration in original) (citation omitted). The improper means requirement "is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules." Leigh Furniture & Carpet Co. v. Isom , 657 P.2d 293, 308 (Utah 1982). Nunes argues that Rushton interfered with her economic relations with the readers who purchase her books by way of two improper means: (1) posting defamatory comments on the internet and (2) infringing Nunes's copyright to A Bid for Love .
Nunes's tortious interference claim fails because she cannot satisfy the improper means element. First, Rushton's online comments were not contrary to law. As noted above, the comments did not breach any common-law rules creating liability for defamation, defamation per se, false light, or business disparagement. Because the comments were not improper, they cannot support a tortious interference claim.
Second, although Rushton's copyright infringement was contrary to law, to the extent that Nunes's tortious interference claim is based upon infringement, it is preempted by the Copyright Act. The Act states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106... and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title." 17 U.S.C. § 301(a). Both prongs of this preemption test are satisfied. Nunes's book, A Bid for Love , is a literary work of authorship and thus within the scope of section 102(a). Moreover, the common law right to recover damages for intentional interference based upon copyright infringement is equivalent to the right "to prepare derivative works based upon the copyrighted work" described in section 106. Both an intentional interference claim and a copyright claim would seek the same damages for the same infringing conduct.
Preemption of a tortious interference claim based upon copyright infringement is widely recognized by the circuit courts. In Ray v. ESPN, Inc. the Eights Circuit affirmed a lower court's dismissal of a wrestler's claim for interference with prospective economic advantage against a network that aired the wrestler's past matches without his permission. 783 F.3d 1140, 1142-44 (8th Cir. 2015) (per curiam). In so doing, the court rejected the wrestler's "contention that his claim for interference with prospective economic advantage is uniquely beyond the preemptive scope of the Copyright Act." Id. at 1144 n.2. Other circuits have reached similar decisions. Stromback v. New Line Cinema , 384 F.3d 283, 306 (6th Cir. 2004) ("Generally, tortious interference claims (with contract or prospective economic advantage) are held to be preempted because the rights asserted in such claims are not qualitatively different from the rights protected by copyright."); Harper & Row Publishers, Inc. v. Nation Enters. , 723 F.2d 195, 201 (2d Cir. 1983)reversed on other grounds in 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (holding that the Copyright Act preempted a tortious interference claim).
Because neither the internet posts nor Rushton's copyright infringement can satisfy the improper means element, the court grants summary judgment in favor of *1237 Rushton on the tortious interference with business relations claim.
VII. ELECTRONIC COMMUNICATION HARASSMENT
Nunes also brings a claim for electronic communication harassment under Utah Code section 76-9-201. She alleges that Rushton's comments posted on Goodreads, Facebook, and GoFundMe violated this criminal statute, which provides:
A person is guilty of electronic communication harassment and subject to prosecution ... if with intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another, the person ... makes repeated contact by means of electronic communications, regardless of whether a conversation ensues ....
UTAH CODE § 76-9-201(2).[4] Nunes argues that the following provision of this statute creates a civil cause of action for violating the statute: "[C]riminal prosecution under this section does not affect an individual's right to bring a civil action for damages suffered as a result of the commission of any of the offenses under this section." Id. § 76-9-201(4)(a).
In order to prevail on a cause of action based upon this statute, Nunes must first demonstrate that Utah Code section 76-9-201 creates a civil cause of action. There is no express language in the statute authorizing civil claims. In the absence of an express grant of a private cause of action, a civil claim exists only if the language of Utah Code section 76-9-201 creates an implied right to sue.
"In Utah, '[i]n the absence of language expressly granting a private right of action[,] ... the courts of this state are reluctant to imply a private right of action based on state law." Buckner v. Kennard , 99 P.3d 842, 853 (Utah 2004) (alterations in original) (citation omitted). Indeed, "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action." Id. ; see also id. at 853 n.6 (listing numerous cases where Utah courts refused to recognize an implied private cause of action). In Miller v. Weaver , for example, the Utah Supreme court assessed an argument that the following statutory language created a civil claim:
No civil action by or on behalf of a student relating to the professional competence or performance of a certified employee of a school district ... may be brought in a court until at least 60 days after the filing of a written complaint with the board of education of the district, or until findings have been issued by the board after a fair hearing on the complaint, whichever is sooner.
66 P.3d 592, 598 (Utah 2003). The plaintiff in that case asserted that this language implied that students may sue individuals for a violation of any statute concerning the professional competence of school district employees. Id. The Utah Supreme Court rejected this argument, reasoning that the statute only fashioned procedural requirements for existing causes of action; it did not create a new claim. Id. at 598-99.
The statutory language at issue in this case similarly fails to meet the high bar for creating an implied cause of action. The electronic communication harassment statute provides that a criminal prosecution under the statute does not foreclose "a civil action for damages suffered as a result of the commission of any of the offenses under this section." UTAH CODE § 76-9-201(4)(a). This language does not impliedly create a new cause of action. The plain language of the statute confirms only that a criminal prosecution does not prevent *1238 the victim from bringing an existing civil claim-e.g., for intentional infliction of emotional distress or defamation-against the perpetrator.
Because Utah Code section 76-9-201 does not authorize a private cause of action, Nunes's claim for electronic communication harassment under this statute fails as a matter of law.
VIII. FALSE ADVERTISING UNDER FEDERAL LAW
Nunes seeks both money damages and injunctive relief for her false advertising claim under the Lanham Act, which provides:
Any person who, on or in connection with any goods or services ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a)(1).
Nunes contends that Rushton violated this provision by using multiple sock puppet accounts to post positive reviews of her books and negative reviews of Nunes's books. Nunes argues that two aspects of the sock puppet reviews constitute false advertising. First, by pretending to be an independent reader of the books, Rushton deceived consumers both by obscuring her role as the source of the self-serving praise heaped upon her own books and by concealing the fact that the negative reviews of Nunes's books were written by a competing author. Second, by using several sock puppet accounts to post positive or negative reviews, Rushton misled consumers by creating the false impression that multiple individuals liked her books and disliked Nunes's books when, in fact, only one person held these opinions.
Both Rushton and Nunes moved for summary judgment on the false advertising claim, each arguing that she should prevail as a matter of law. The court grants summary judgment in favor of Rushton because (1) Nunes did not produce evidence of customer confusion and (2) Nunes failed to produce any competent evidence of damages or unjust enrichment caused by Rushton's alleged false advertising.[5]
A. Consumer Confusion
The plaintiff in a false advertising claim must prove:
(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.
*1239 Sally Beauty Co. v. Beautyco, Inc ., 304 F.3d 964, 980 (10th Cir. 2002) (citation omitted). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Zoller Labs., LLC v. NBTY, Inc. , 111 Fed.Appx. 978, 982 (10th Cir. 2004) (unpublished) (citation omitted). A literally false advertising claim "may be established without evidence of consumer deception." Id. "If, however, 'a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers.' " Id. (alteration in original).
Nunes does not present any consumer surveys, records of sales, or other extrinsic evidence that Rushton's positive reviews of her own books and negative reviews of Nunes's books caused actual consumer confusion regarding the characteristics or readership approval of the books. Because Nunes has not presented any evidence of actual consumer confusion, she can only prevail on her false advertising claim if Rushton's online reviews were literally false, either on their face or by necessary implication.
Literal falsity of online reviews was considered in Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC , No. 08CV0442(DLC), 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016). There, a hair removing business posted two types of online reviews about a competitor. One category of reviews involved fake bad experiences of non-existent customers. The court found that such statements were literally false because they described events that never occurred and fictitious customers that did not exist. Id. at *7. A second category of reviews were posted under three separate pseudonyms by an owner of a competing business who was an actual customer of the plaintiff. Id. at *8. These reviews asserted that the services was slow and that the plaintiff's employees were rude. Id. The court found that these reviews were not literally false because they were "largely matters of opinion and the plaintiff [had] not shown that they are actionable as false statements of fact." Id.
The reviews in this case align with the second category of Romeo & Juliette reviews rather than with the first. Rushton did not misrepresent the essential characteristics of the books she reviewed. Instead, she claimed that her books were good while Nunes's books were boring and outdated. Such statements are a matter of opinion and cannot be proven true or false. Accordingly, the court finds that Rushton's online reviews are not literally false on their face or by necessary implication. In the absence of a showing of the actual consumer confusion, Nunes's false advertising claim for damages and injunctive relief under the Lanham Act cannot survive summary judgment.
B. Damages
Independently, Nunes's claim for monetary damages under the Lanham Act cannot succeed because Nunes has failed to substantiate any damages suffered as a result of Rushton's online reviews. Evidence of damages is not required to obtain injunctive relief for false advertising. Harper House, Inc. v. Thomas Nelson, Inc. , 889 F.2d 197, 210 (9th Cir. 1989). But proof that the plaintiff has been injured is an essential element of a damages claim for false advertising. Sally Beauty Co. , 304 F.3d at 980 ; see also Air Turbine Tech., Inc. v. Atlas Copco AB , 410 F.3d 701, 709 (Fed. Cir. 2005) ("[F]alse advertising under the Lanham Act requires, among other things, a showing of both an injury and a causal link between the injury and the allegedly false *1240 advertising."); Quabaug Rubber Co. v. Fabiano Shoe Co. , 567 F.2d 154, 161 (1st Cir. 1977) ("In order to recover damages for a section 1125(a) violation, the aggrieved party must show that it suffered actual harm to its business."). Additionally, if a plaintiff fails "to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits under 15 U.S.C. § 1117(a)." Logan v. Burgers Ozark Country Cured Hams Inc. , 263 F.3d 447, 465 (5th Cir. 2001). Thus, to recover damages for false advertising, Nunes is required to produce evidence that the online reviews either caused Rushton's book sales to increase or caused Nunes's book sales to decrease.
Nunes has not presented any evidence that Rushton wrongfully profited from her online reviews. Nunes instead claims that she has been harmed by the negative reviews and points to the testimony of her expert, Heather Moore, and the lay opinion of a representative of Amazon.com as evidence that she has been harmed. Moore testified that, in general, negative online reviews negatively affect book sales. Moore admitted, however, that she did not analyze Nunes's book sales and that she did not know whether her sales went up or down after Rushton posted her reviews. Moore further admitted that she could not assign a monetary value to the effect online reviews may have and that her opinion regarding negative reviews was based on common sense. The Amazon.com representative provided his lay testimony that bad reviews generally discourage sales.
In essence, Nunes presented generic, common-sense evidence that negative online reviews typically inhibit sales. Nunes did not produce evidence as to the specific effect that Rushton's online reviews had on her books. No evidence was presented regarding sales during the relevant period of time. See Southland Sod Farms v. Stover Seed Co. , 108 F.3d 1134, 1143 (9th Cir. 1997) (concluding that expert analysis of sales data before and after the alleged false advertising was admissible to prove damages). Nor did Nunes present evidence in the form of customer surveys or customer testimony. Absent specific evidence of any effect that Rushton's negative online reviews had on Nunes's book sales, there is no proof to support Nunes's damages claim for lost sales.
At the hearing on the summary judgment motions, Nunes also asserted that she is entitled to a damages award because the negative reviews caused her to experience mental anguish, which in turn prevented her from writing two books. Similar to her damages claim for copyright infringement, Nunes argues that she is entitled to the profits from these two unwritten books as false advertising damages. Once again, however, Nunes does not cite any authority for the proposition that the Lanham Act provides for damages stemming from a business competitor's mental anguish and anxiety caused by false advertising. Nor has the court discovered any caselaw to that effect. The court therefore concludes that there is no legal basis under the Lanham Act for a damages claim based on Nunes's emotional reaction to the alleged false advertising.
In sum, Nunes has not presented evidence of lost book sales, and she cannot claim the profits from two unwritten books as damages. Without any evidence that she suffered a legally cognizable injury, Nunes's damages claim for false advertising fails as a matter of law. For this additional reason, Rushton is entitled to summary judgment on the damages claim for false advertising.
IX. DECEPTIVE TRADE PRACTICES UNDER UTAH LAW
Next, Nunes alleges that Rushton's positive reviews of her books and negative *1241 reviews of Nunes's books violate the Utah Truth in Advertising Act. Nunes contends that she is entitled to both injunctive relief and an award of damages under this Act. Both Nunes and Rushton move for summary judgment on this cause of action.
A. Injunctive Relief
The Utah Truth in Advertising Act provides that if a defendant has violated any of the provisions of the Act, a court "shall enjoin the defendant from continuance of the violation." UTAH CODE § 13-11a-4(2)(a). But this ostensibly mandatory injunction provision has an important caveat. The statute also provides:
No action for injunctive relief may be brought for a violation of this chapter unless the complaining person first gives notice of the alleged violation to the prospective defendant and provides the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement. If the prospective defendant does not promulgate a correction notice within 10 days of receipt of the notice, the complaining person may file a lawsuit under this chapter.
Id. § 13-11a-4(5). Absent this statutory notice, a plaintiff is not entitled to seek injunctive relief.[6] Nunes and Rushton dispute whether notice was given in this case.
Nunes argues that prelitigation emails that she sent to Rushton, both at her personal email account and to an email account Rushton maintained under her Sam Taylor Mullins pen name, satisfied the statutory notice requirement. At most, Nunes complains about plagiarism and copyright infringement in these emails. Nunes also asserts that a blog post on her website provided the required notice. In the blog post, Nunes accuses an unnamed individual behind the Sam Taylor Mullins pen name of copyright infringement. The blog post also posits that the unnamed infringer posted negative reviews of Nunes's books through sock puppet accounts. Nunes argues that Rushton must have read the blog post because she wrote a comment to the post.
The prelitigation emails and blog post fall far below the notice requirements of Utah Code section 13-11a-4(5), which requires a prospective plaintiff to "gives notice of the alleged violation [of the Utah Truth in Advertising Act] to the prospective defendant" and to provide "the prospective defendant an opportunity to promulgate a correction notice by the same media as the allegedly violating advertisement." Neither the emails not the blog post mention the Act or allege any violation of the Act. Nor do these communications ever notify Rushton that she must post a correction notice in order to avoid an injunctive relief action under the Act. Because Nunes did not issue a valid statutory notice, she cannot prevail on an action *1242 for injunctive relief under the Utah Truth in Advertising Act.
B. Damages
"Any person ... may maintain an action to enjoin a continuance of any act in violation of [the Utah Truth in Advertising Act] and, if injured by the act , for the recovery of damages." UTAH CODE § 13-11a-4(2)(a) (emphasis added). Accordingly, while any person can seek an injunction for a violation of the Act, only those who have been injured are entitled to damages.
Because Nunes has no proof of injury, she cannot recover damages under the Act. Nunes's claim under the Utah Truth in Advertising Act arises from the same online reviews as the Lanham Act claim. The court has already determined that Nunes failed to produce any evidence that these online reviews harmed her economically. And, once again, Nunes has not provided any authority or argument for the proposition that the Utah Act permits recovery of damages caused by a competitor's emotional response to false advertisements. Therefore, Rushton is entitled to summary judgment on the damages claim under the Act because Nunes has not produced evidence that she suffered a legally cognizable injury.
X. AFFIRMATIVE DEFENSES
Rushton asserted a number of affirmative defenses in her answer to the complaint. Nunes brings two motions for summary judgment on these defenses.
A. The "Insanity Defense"
First, Nunes brings a motion regarding what she labels as Rushton's insanity defense. Nunes requests two forms of relief. She (1) asks the court to grant summary judgment on the insanity defense and (2) requests that the court exclude evidence that Rushton suffers from bipolar disorder and that her actions of copying elements of A Bid for Love can be attributed to a manic phase of this disorder. Nunes argues that this evidence should not be considered when determining whether Rushton's infringement was "willful" within the meaning of the Copyright Act.
To the extent that this motion seeks summary judgment on an affirmative defense, it is denied. Rushton did not plead anything akin to an insanity affirmative defense. Thus, there is no affirmative defense at issue in this case that can be summarily adjudicated.
To the extent that the motion requests exclusion of evidence of any diagnosis of bipolar disorder, the motion is premature. The exclusion or admission of this evidence does not affect the court's determination that summary judgment on the willfulness of Rushton's copyright infringement is improper. Even if the evidence were excluded, there would be a genuine dispute of material fact as to whether Rushton's infringement was willful. See supra Part I.A.2. The court, therefore, denies the motion in limine as premature. Nunes may reassert her request to exclude the evidence in a pretrial motion.
B. Rushton's Other Affirmative Defenses
Nunes brings a separate motion for summary judgment on Rushton's affirmative defenses of comparative fault, estoppel, laches, unclean hands,[7] and failure to mitigate damages.
*1243 Rushton does not contest the motion to the extent that it seeks summary judgment on the comparative fault, estoppel, and laches affirmative defenses. The court, therefore, grants summary judgment as to these defenses.
Next, Nunes asks for summary judgment on Rushton's unclean hands defense. Unclean hands may be asserted only as a defense to equitable claims; it is not a defense to legal claims. Hill v. Estate of Allred , 216 P.3d 929, 935 (Utah 2009). None of Nunes's equitable claims for injunctive relief remain in the case. Because the unclean hands defense is inapplicable to the remaining claim for statutory damages for copyright infringement, the court grants summary judgment as to the unclean hands defense.
Finally, Nunes moves for summary judgment on Rushton's failure to mitigate damages affirmative defense. Under this defense, Rushton argues that Nunes failed to mitigate her actual damages for copyright infringement during the period of time where Nunes stopped writing. The court, however, has granted summary judgment on the copyright actual damages claim, leaving only a claim for statutory damages. Failure to mitigate is not a valid defense to statutory damages. Moothart v. Bell , 21 F.3d 1499, 1506-07 (10th Cir. 1994) (holding that a failure to mitigate defense did not apply to a statutory penalty for violating ERISA); Purzel Video GmbH v. St. Pierre , 10 F.Supp.3d 1158, 1169 (D. Colo. 2014) ("A copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense."); Malibu Media, LLC v. Yamaguchi , No. 13-CV-02781-WYD-MEH, 2014 WL 2021973, at *4 (D. Colo. May 16, 2014) (same). Because Rushton cannot prevail on her failure to mitigate defense, the court grants summary judgment in favor of Nunes on this defense as well.
XI. RUSHTON'S MOTIONS IN LIMINE
Rushton filed a number of motions in limine to exclude various categories of evidence. Rushton moves to exclude the testimony of Heather Moore, Nunes's damages expert; Scott Bosworth, another damages expert; Josi Kilpack, a copyright infringement expert; and Bruce Webster, a forensic computer investigator. Rushton also moves the court to exclude the testimony of Heather Moore and Josi Kilpack as a sanction for allegedly violating a protective order.
None of the testimony that Rushton seeks to exclude is relevant to the motions for summary judgment filed by the parties in this case. As noted above, the court grants summary judgment on many of the claims brought by Nunes for reasons that are unrelated to the testimony proffered by these experts. The court, therefore, denies these motions as moot. If Nunes intends to introduce any of this evidence at the trial on statutory copyright infringement damages, Rushton may renew any of her motions in limine prior to trial.
CONCLUSION
For the forgoing reasons, the court ORDERS as follows:
(1) The court GRANTS Rushton's motion for summary judgment. [Docket 172]. The court grants judgment in favor of Rushton on Nunes's claim for actual damages for copyright infringement, as well as Nunes's causes of action for defamation, defamation per se, false light, business disparagement, tortious interference, electronic communication harassment, false advertising, and deceptive trade practices.
(2) The court GRANTS IN PART AND DENIES IN PART Nunes's motion for summary judgment on the copyright *1244 infringement claim. [Docket 218]. The court grants partial summary judgment on the issue of Rushton's liability for this cause of action.
(3) The court DENIES Nunes's motion for summary judgment on the defamation claims. [Docket 228].
(4) The court DENIES Nunes's motion for summary judgment on the electronic communication harassment claim. [Docket 229].
(5) The court DENIES Nunes's motion for summary judgment on the false advertising claims. [Docket 230].
(6) The court DENIES Nunes's motion for summary judgment on the tortious interference claim. [Docket 231].
(7) The court DENIES Nunes's motion for summary judgment on what it labels as Rushton's insanity defense. [Docket 160].
(8) The court GRANTS Nunes's motion for summary judgment on Rushton's affirmative defenses of comparative fault, estoppel, laches, unclean hands, and failure to mitigate damages. [Docket 161].
(9) The court DENIES AS MOOT Rushton's motion in limine to exclude the testimony of Bruce Webster. [Docket 159].
(10) The court DENIES AS MOOT Rushton's motion in limine to exclude the testimony of Josi Kilpack. [Docket 168].
(11) The court DENIES AS MOOT Rushton's motion in limine to exclude the testimony of Heather Moore. [Docket 169].
(12) The court DENIES AS MOOT Rushton's motion in limine to exclude the testimony of Heather Moore and Josi Kilpack for violations of a protective order. [Docket 170].
(13) The court DENIES AS MOOT Rushton's motion in limine to exclude the testimony of Scott Bosworth. [Docket 171].
The only issues that remain for trial are (1) whether Rushton's copyright infringement was willful and (2) the amount of the statutory damage award.

In 2017, the Utah Legislature amended this statute. 2017 Utah Laws Ch. 462 (S.B. 118). But none of these amendments affect the statute's application in this case.

Because the court resolves the motions for summary judgment on other grounds, it need not address the issue of whether the use of multiple sock puppet accounts to express opinions about the quality of a novel may constitute a "false or misleading description of fact, or false or misleading representation of fact" under the Lanham Act. See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC , No. 08CV0442(DLC), 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016) (concluding that online postings criticizing a business for slow service and rude employees under three separate pseudonyms were insufficient to establish Lanham Act liability because the postings were statements of opinion, not false statements of fact.).

Citing Proctor & Gamble Co. v. Haugen , 947 F.Supp. 1551, 1555-56 (D. Utah 1996), Rushton argues that a failure to provide the statutory notice is also fatal to a claim for damages under the Act. The Proctor & Gamble court concluded that the language of Utah Code section 13-11a-4, taken as a whole, requires potential plaintiffs to provide notice before filing a suit for either injunctive relief or damages. This court disagrees with this interpretation of the Utah Truth in Advertising Act. The plain language of section 13-11a-4(5) creates a notice requirement only for an "action for injunctive relief." Reading this provision to require notice before suing for either injunctive relief or damages would turn the plain language of the statute on its head. See In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig. , No. ML 12-2317 CAS (JEMx), 2012 WL 6062047, at *16 n.7 (C.D. Cal. Dec. 3, 2012) (disagreeing with the Proctor & Gamble interpretation of Utah Code section 13-11a-4(5) and ruling that this notice provision applies only to claims for injunctive relief).

Rushton pleaded unclean hands and bad faith as separate affirmative defenses. But at oral argument, her counsel stated that the bad faith defense was identical to the unclean hands defense. The court, therefore, addresses both defenses under the term "unclean hands."