NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――――

**SME STEEL CONTRACTORS, INC., CORE-BRACE, LLC,**
*Plaintiffs-Appellants*

**v.**

**SEISMIC BRACING COMPANY, LLC, ANDREW HINCHMAN,**
*Defendants-Appellees*

―――――――――――

2023-2426

―――――――――――

Appeal from the United States District Court for the District of Utah in No. 2:17-cv-00702-RJS, Judge Robert J. Shelby.

―――――――――――

Decided:  July 23, 2025

―――――――――――

MICHAEL EIXENBERGER, Kirton McConkie, Salt Lake City, UT, argued for plaintiffs-appellants.  Also represented by JAMES T. BURTON, JUSTIN W. STARR.

SCOTT DAVID SWANSON, Shaver & Swanson, LLP, Boise, ID, argued for defendants-appellees.

―――――――――――

Before DYK, CUNNINGHAM, *Circuit Judges*, and HALL,
*District Judge*.[1]

DYK, *Circuit Judge*.

SME Steel Contractors, Inc. and its sister company
Core-Brace, LLC (collectively, "SME Steel") brought claims
of patent infringement, false advertising and false associa-
tion under the Lanham Act, unfair competition and certain
deceptive trade practices under Utah state law, and copy-
right infringement against Seismic Bracing Co., LLC and
Andrew Hinchman (collectively, "Seismic Bracing"). The
United States District Court for the District of Utah
granted summary judgment to Seismic Bracing. For the
following reasons, we *affirm*.

BACKGROUND

I – Patent Claims

A

SME Steel Contractors, Inc. owns U.S. Patent
No. 7,174,680 (the "'680 patent"). The patent is directed to
structural support members called buckling-restrained
braces ("BRBs") that "minimize the impact of seismic
forces" on a building. '680 patent, col. 1 ll. 32–36. BRBs
incorporate a steel core and a concrete-filled bracing ele-
ment:

---

[1]    Honorable Jennifer L. Hall, District Judge, United
States District Court for the District of Delaware, sitting
by designation.



Appellants' Br. 13 (annotations in original) (citing '680 patent, Fig. 1). Although not visible in the figure shown above, it is critical to the function of the BRBs that the steel core "move independently of the bracing element," '680 patent, col. 1 ll. 56–58, such that the steel core may undergo "plastic deformation when subjected to seismic magnitude forces," *id.* col. 1 ll. 39–41, while the bracing element maintains structural integrity, *id.* col. 1 ll. 45–49; *id.* col. 2 ll. 38–41.

To facilitate independent movement of the steel core from the bracing element, the '680 patent describes using an "air gap" that prevents bonding between the core member and one or more bearing members that are part of the bracing element. In a cross-sectional view of a BRB as shown below, this air gap is positioned between the core member and the bearing member, separating the steel core from the rest of the concrete bracing element:

4                                SME STEEL CONTRACTORS, INC. v.
                                  SEISMIC BRACING COMPANY, LLC



Appellants' Br. 19 (alterations and annotations in original) (citing '680 patent, Fig. 3). According to the patent, this air gap "minimizes the pressure exerted on the buckling restraining assembly during plastic deformation of the buckling restraining apparatus, allowing the core member to expand when the core member undergoes plastic deformation." '680 patent, col. 2 ll. 48–52.

The independent claims of the '680 patent all recite an "air gap" that is "formed between" or "positioned between" the core member and the bearing members. For example, independent claim 1, which is representative of independent claims 9, 18, and 26, recites the following:

1.  A brace apparatus comprising:

    a core member having a first end, a second end, and a middle portion;

    a buckling restraining assembly surrounding at least the middle portion of the core member, the buckling restraining assembly comprising:

> a metal support positioned external to the core member;
>
> a rigid cementitious layer coupled to the metal support and surrounding the core member; and
>
> at least two separate bearing members each of which is interposed between the rigid layer and the core member so that one side of the bearing member is in direct contact with the rigid layer, and an opposite side of the bearing member is not in direct contact with the core member such that an <u>air gap is formed between</u> the core member and the bearing members;
>
> the core member is comprised of a single piece of metal.

'680 patent, col. 12 l. 56–col. 13 l. 5 (emphasis added). Independent claim 27 recites in relevant part that "an <u>air gap is positioned between</u> the first bearing member and the core member first side and <u>an air gap is positioned between</u> the second bearing member and the core member second side, one side of each bearing member is in direct contact with the rigid layer." *Id.* col. 15 l. 30–col. 16 l. 3 (emphasis added).

## B

Seismic Bracing, founded by SME Steel's former chief engineer Andrew Hinchman, competes with SME Steel in the sale of BRBs. In Seismic Bracing's design, corrugated carboard is affixed to the steel core of the BRB. The steel core and cardboard are then positioned in a metal tube and concrete is poured into the metal tube to fill the tube around the cardboard, whereby the corrugated cardboard

separates the concrete of the buckling restraining assembly from the steel core.

In 2017, SME Steel sued Seismic Bracing, alleging that Seismic Bracing's BRBs infringed claims 1, 3, 4, 9, 11, 18, 26, and 27 of the '680 patent. During claim construction, the district court construed the claimed "air gap" as "an empty or unfilled space or interval," and "positioned between" and "formed between" as "spans the distance between," the core member and bearing member. *SME Steel Contractors v. Seismic Bracing Co.*, No. 2:17-cv-00702, 2020 WL 1434147, at *4, *6–7 (D. Utah Mar. 24, 2020) ("*Claim Construction Order*").

Seismic Bracing sought summary judgment on SME Steel's patent infringement claim and related unfair competition claim under Utah's Unfair Competition Act, Utah Code § 13-5a-103. The parties agreed that the state law unfair competition claim rose and fell with the patent infringement claim. Relevant here, the district court concluded that no reasonable jury could find that Seismic Bracing infringed the asserted claims of the '680 patent because Seismic Bracing's BRBs did not have an air gap that "spans the distance between the bearing member and the core member." *SME Steel Contractors, Inc. v. Seismic Bracing Co.*, 681 F. Supp. 3d 1181, 1201–02 (D. Utah 2023) ("*Decision*") (citations and quotation marks omitted).[2]

---

[2] The district court also granted summary judgment to Seismic Bracing of no infringement under the doctrine of equivalents, *Decision* at 1202–06, which SME Steel does not challenge on appeal.

## II – Lanham Act Claims

In addition to patent infringement claims, SME Steel[3] also sued Seismic Bracing on claims of false association and false advertising under the Lanham Act, codified in relevant part at 15 U.S.C. § 1125(a)(1)(A), (B), and on related claims of deceptive trade practice under § 13-11a-3(b), (c) of the Utah Truth in Advertising Act ("UTAA"). These claims all related to representations made by Seismic Bracing in a Design Manual that Seismic Bracing sent to prospective BRB clients in March 2017.

Amidst ninety pages of information, the Manual included the following statements:

- "Produce capacity of over 5000 BRBs per year." J.A. 606.

- "These patented methods have now been tested and qualified for use on projects in accordance with governing building codes (AISC 341)." J.A. 604.

The Design Manual further included a report from the University of Utah, testing five of Seismic Bracing's BRBs and concluding that three of those BRBs satisfied AISC 341-10 requirements and two did not. SME Steel argued that the statements made by Seismic Bracing in the Manual were false[4] and that Seismic Bracing used SME Steel's persona, including SME Steel's proprietary technical drawings and

---

[3]    SME Steel Contractors, Inc. sued Seismic Bracing on some of the claims while Core-Brace, LLC sued Seismic Bracing on the other claims. For simplicity, we refer to both SME Steel Contractors, Inc. and Core-Brace, LLC, collectively as SME Steel.

[4]    SME Steel asserted that the two statements above were literally false, and other statements in the Design Manual, while not literally false, were misleading.

a similar logo, in the Design Manual.  In turn, SME Steel contended that Seismic Bracing was awarded bids, to SME Steel's detriment, on the bases of the alleged misrepresentations and false association.

Seismic Bracing sought summary judgment on the Lanham Act and related state law UTAA claims.  The district court determined SME Steel lacked standing for its false advertising and false association claims, concluding that SME Steel did not show that the alleged misrepresentations in the Design Manual were the proximate cause of its injury.  Rejecting SME Steel's contention that injury should be presumed, the district court determined that SME Steel failed to show that there was a genuine issue of material fact as to whether Seismic Bracing made literally false statements, and it also rejected SME Steel's argument that Seismic Bracing acted with an intent to deceive consumers.  The district court considered related UTAA § 13-11a-3 claims on the merits, including, relevant to this appeal, claims under § 13-11a-3(b), (c).[5]  Because it concluded that there was no genuine issue of material fact as to likelihood of confusion, which is a required element under § 13-11-a-3(b) and (c), it granted summary judgment to Seismic Bracing on those claims.

### III – Copyright Claims

SME Steel further claimed that Seismic Bracing engaged in copyright infringement, alleging that Seismic Bracing used several of SME Steel's copyrighted technical

---

[5]    The district court also considered claims under UTAA § 13-11-a-3(e), (g), and it denied Seismic Bracing's motion for summary judgment on those claims.  *See Decision* at 1211.

drawings of BRB designs in the Design Manual.[6]  Seismic Bracing did not dispute that there are drawings in the Design Manual that are identical to drawings found in SME Steel's copyright registrations.  SME Steel argued that Seismic Bracing's use of these drawings infringed its copyright and that it was entitled to damages, particularly the profits derived by Seismic Bracing from infringement.  As to these claims, the district court granted summary judgment to Seismic Bracing, concluding SME Steel had "not presented sufficient evidence of a causal connection" between the alleged copyright infringement and alleged Seismic Bracing profits. *Decision* at 1220.

The district court entered final judgment on August 29, 2023.  SME Steel appeals the district court's grant of summary judgment on the claims of patent non-infringement and related unfair trade practices under § 13-5a-103; false association and false advertising under the Lanham Act and related claims under UTAA § 13-11a-3(b), (c); and copyright infringement.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judgment de novo. *Crocs, Inc. v. Effervescent, Inc.*, 119 F.4th 1, 3 (Fed. Cir. 2024); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016).  We apply our own law on issues unique to patent law, and we apply the law of the

---

[6]  SME Steel's sister company, Core-Brace, LLC, owns U.S. Copyright Registration No. VAu001279857, titled "BRB & Connection Layouts" ("'857 Registration"); U.S. Copyright Registration No. VAu001279862, titled "Typical Welded BRB & Connection Layouts" ("'862 Registration");    and    U.S.    Copyright    Registration No. VAu001279859, titled "Typical Bolted BRB & Connection Layouts" ("'859 Registration").

regional circuit—in this case Tenth Circuit law—to issues unrelated to patent law. *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 604 (Fed. Cir. 2015).

## I – Patent Infringement

We begin with SME Steel's challenge to the district court's summary judgment determination that Seismic Bracing does not infringe the asserted claims of the '680 patent. SME Steel challenges the district court's construction of the claimed "positioned between" or "formed between" as requiring that the claimed air gap "spans the distance between" the core member and bearing members.[7]

There is some ambiguity as to whether the district court's claim construction requires the air gap to "span[] the distance between" the core member and bearing member (which we call the transverse distance), whether the air gap must also extend along the entire length of the core member (which we call the longitudinal direction), or whether the air gap must span both the transverse and longitudinal direction.

As to the transverse direction, SME Steel argues that the air gap may be "formed between" or "positioned between" the core member and bearing members even if "it does not fill the entire space," Appellants' Br. 44–45; *see also id.* at 48, and that the steel core would still be prevented from bonding to the concrete even if the air gap spanned less than the entire distance, *see id.* at 49.

SME Steel's proposed construction, however, is foreclosed by the prosecution history of the '680 patent. *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020); *Tempo Lighting, Inc. v. Tivoli,*

---

[7]    The parties do not dispute on appeal that "formed between," as used in claims 1, 9, 18, and 26, and "positioned between," as used in claim 27, have the same meaning.

*LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). During prosecution, the patent examiner rejected claims in the application for the '680 patent as obvious over U.S. Patent No. 6,826,874 ("Takeuchi") in view of U.S. Patent No. 6,530,182 ("Fanucci"). Takeuchi does not recite an air gap, but the examiner argued that it would have been obvious to modify Takeuchi "to show an air gap between the core and the bearing member because having an air gap . . . would significantly increase the failure load of the supporting structure as taught by Fanucci." J.A. 430. SME Steel responded that Takeuchi "teaches away from an air gap" as it uses an "adhesion-preventive film to serve the purpose of preventing the steel center member from adhering to the concrete" and "the use of an air gap would defeat the purpose" of this film. J.A. 425, 433. After a telephone interview with the examiner, SME Steel amended its claims to recite an air gap positioned between or formed between the core member and bearing members, and the examiner allowed the claims because the "prior art d[id] not show an air gap being formed between the core member and the bearing members . . . ." J.A. 401. SME Steel thus made clear that the claims do not cover an air gap spanning less than the entire transverse direction and do not permit other material in the transverse direction partitioning the air gap. Any ambiguity created by Figure 4 of the specification cannot support a contrary construction. *See Personalized Media*, 952 F.3d at 1346 (determining prosecution history statements and amendments were decisive even where specification was ambiguous). There is no dispute that, under the district court's construction, Seismic Bracing's BRBs do not infringe the claims. *See* Appellants' Br. 63 (arguing only that Seismic Bracing's cardboard design infringes under SME Steel's proposed construction).

As to the longitudinal direction, SME Steel itself concedes that the claimed invention must have an air gap that "extend[s] the entire length of the steel core," Appellants'

Br. 49 n.1. SME Steel has failed to raise a genuine issue of material fact as to whether Seismic Bracing's BRBs infringe the asserted claims because it has not provided any evidence showing that there is an air gap extending along the length of the steel core member of Seismic Bracing's BRBs.

The accused products have corrugated cardboard wrapped around the steel core member. *See* Appellants' Br. 15; Appellees' Br. 33. SME Steel itself describes the cardboard of the accused products as having "a top layer, a bottom layer, an internal corrugated layer, and multiple air pockets between the top and bottom layer." Appellants' Br. 24 (citing J.A. 497); *see also* Appellants' Br. 26 ("[Seismic Bracing]'s BRBs have multiple unfilled spaces . . . ."). There is no evidence in the record of any air gap that extends along the length of the steel core, and SME Steel, who bears the burden on infringement, has not identified any such evidence. Accordingly, we affirm the district court's grant of summary judgment on patent noninfringement to Seismic Bracing.

Both parties also agree that SME Steel's related allegations under Utah's Unfair Competition Act "rise or fall with the [c]ourt's determination of the alleged patent infringement claims." Appellants' Br. 63–64 (citing J.A. 555); *see also* Appellees' Br. 62–63. We thus also affirm the district court's grant of summary judgment in Seismic Bracing's favor on SME Steel's unfair competition claims under Utah Code § 13-5a-103.

## II – Lanham Act Claims

We next turn to SME Steel's Lanham Act claims. SME Steel argues that the district court erred in granting summary judgment to Seismic Bracing on SME Steel's false advertising and false association claims under 15 U.S.C. § 1125(a)(1)(A) and (B) as well as on SME Steel's related UTAA § 13-11a-3(b),(c) claims.

## A – Standing

Citing the Supreme Court's framework in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the district court determined that SME Steel did not have statutory standing to sue under the Lanham Act. *See Decision* at 1207–11.

SME Steel contends that the district court misconstrued Tenth Circuit law on standing. We need not address the district court's statutory standing determination, however, because SME Steel has failed to show a genuine issue of material fact on the merits of its Lanham Act claims, particularly with respect to a showing of injury. *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005) ("[S]tatutory standing need not be addressed if the court determines that the plaintiff loses on the merits anyway."); *see also Wise v. DeJoy*, 71 F.4th 744, 751 (10th Cir. 2023) (explaining, on review of summary judgment, that the appellate court "ha[s] discretion to affirm on any ground adequately supported by the record").[8]

---

[8]    The district court determined SME Steel lacked standing to sue under the Lanham Act for both the false association and false advertising claims because it did not show injury flowing from Seismic Bracing's alleged misrepresentations nor did it show it was entitled to a presumption of injury. *See Decision* at 1207–11. There appears to be a question under Tenth Circuit law whether standing may be established by a presumption of injury. *See Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1239 n.5 (10th Cir. 2023) (explaining that the court has, in the past, "reject[ed] plaintiff's argument that standing could be proven by resorting to the presumption of injury" (citing *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000))).

## B – False Advertising

SME Steel's allegations for false advertising fail because no reasonable jury could find that SME Steel has shown a causal connection between misrepresentations by Seismic Bracing and SME Steel's injuries.  For a false advertising claim under 15 U.S.C. § 1125(a)(1)(B), "a plaintiff must . . . prove[] an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Am. Soc. of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238, 1242 (10th Cir. 2022) (quoting *Lexmark*, 572 U.S. at 140).  To this end, a plaintiff "must prove a 'causal connection' between the defendant's false advertising and the plaintiff's injuries," *Vitamins*, 71 F.4th at 1238 (citation omitted), and "cannot obtain relief without *evidence* of injury," *Am. Soc. of Home Inspectors,* 36 F.4th at 1242 (quoting *Lexmark*, 572 U.S. at 140).

1

To the extent SME Steel alleges there is sufficient evidence showing a causal link between its harm and the alleged misrepresentations in the Design Manual, we disagree.  SME Steel only established that the Design Manual was sent to several potential customers and that Seismic Bracing successfully bid on projects that involved those customers while SME Steel also (unsuccessfully) submitted competing bids on most of those projects.  SME Steel did not present any evidence that the Design Manual—let alone the handful of representations alleged to be

---

We need not address this question, however, because we otherwise affirm the grant of summary judgment on the merits of SME Steel's Lanham Act claims.

misleading within this ninety-page document—played any role in SME Steel's loss of bids.

2

Alternatively, SME Steel argues that it is entitled to a presumption of injury because SME Steel and Seismic Bracing are competitors in a sparsely populated market. Under Tenth Circuit law, where "the plaintiff and defendant are the only two significant participants" in a two-player market, injury may be presumed if the plaintiff shows the defendant made literally false statements or made statements that were literally true but were likely to mislead or confuse customers. *Vitamins*, 71 F.4th at 1235, 1240; *Zoller Lab'ys, LLC v. NBTY, Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004) (non-precedential).

i

SME Steel argues that two of Seismic Bracing's statements in the Design Manual are literally false. First, it contends that Seismic Bracing misrepresented its "[p]roduce capacity of over 5000 BRBs per year." J.A. 606. On its face, the statement, which appears under the heading "[Seismic Bracing] Capabilities," *id.*, refers to future capacity. SME Steel asserts that the statement is literally false because Seismic Bracing uses third-party fabrication shops and did not have such a manufacturing capacity itself. The district court did not err in concluding that "produce"— which can have multiple definitions and may be defined as "to make available for public exhibition or dissemination: such as . . . to oversee the making of," *Decision* at 1210 n.181—is ambiguous, precluding literal falsity. *See I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1009 (10th Cir. 2024) ("A statement can be literally false only if it is unambiguous."). SME Steel does not dispute the multiple dictionary definitions of "produce," and instead argues a jury could conclude the word means the same thing as fabricate. This merely demonstrates that the term might

have another meaning and is thus ambiguous. SME Steel also does not dispute that Seismic Bracing had production capabilities through its manufacturers. A reasonable jury could not conclude the statement is literally false.

Second, SME Steel argues that Seismic Bracing's statement that its "patented methods have now been tested and qualified for use on projects in accordance with governing building codes (AISC 341)," J.A. 604, is literally false because Seismic Bracing "made th[e] claim right after two of the five tested BRBs failed testing" under the AISC requirements. Appellants' Br. 66. Again, we see no error in the district court's determination that this statement was ambiguous, as the statement could have referred to the BRBs that satisfied the testing requirements, not all of Seismic Bracing's BRBs.

ii

SME Steel further contends that, even if the statements are not literally false, the statements were impliedly false, Seismic Bracing acted with intent to deceive consumers, and SME Steel is thus entitled to a presumption of consumer deception. Appellants' Br. 68–69. In some circuits, a party's "intent to deceive is an independent basis for triggering a presumption of consumer deception." *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 315 n.31 (1st Cir. 2002); *see also id.* at 316; *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 260–61 (2d. Cir. 2014)). While at least one other district court in the Tenth Circuit has endorsed the use of this intent-to-deceive-based presumption, *Vitamins Online, Inc. v. HeartWise, Inc.*, No. 2:13-cv-009820-DAK, 2019 WL 6682313, at *9 (D. Utah Sept. 24, 2019), it is not well-settled whether the Tenth Circuit has adopted this test.

Even assuming this test is proper under Tenth Circuit law, the district court correctly concluded that no reasonable jury could conclude that Seismic Bracing acted with

intent to deceive. As evidence of intent to deceive, SME Steel only identified testimony from Mr. Hinchman as to his awareness of what factors a potential customer might consider important in buying a BRB. *See* Appellants' Br. 69–71. This is insufficient to show a genuine dispute of material fact as to intent. *See Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d. Cir. 1991) (affirming no deliberate deception where proof proffered "rests only upon speculation and conjecture").

In sum, no reasonable jury could conclude that SME Steel has demonstrated injury in this case, and the district court did not err in granting summary judgment in Seismic Bracing's favor on false advertising.

## C – False Association

SME Steel further challenges the district court's grant of summary judgment to Seismic Bracing on its claims of false association under the Lanham Act as codified at 15 U.S.C. § 1125(a)(1)(A). Under § 1125(a)(1)(A), a person may be liable for using, "in connection with any goods and services," "any word, term, name, symbol . . . or any false designation of origin," which "is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

As a threshold matter, it is not clear what the basis for SME Steel's false association claim is. SME Steel concedes that "this case does not involve a mark," Appellants' Br. 72, but instead, it appears to contend that it has a particular corporate persona, akin to an individual celebrity, and Seismic Bracing appropriated that persona in its Design Manual. Whether an alleged misappropriation of a corporate persona under the Lanham Act can support a false association claim under Tenth Circuit law is unclear, but in

any event, SME Steel agrees that it must establish likelihood of confusion.

To analyze the likelihood of confusion under § 1125(a)(1)(A), the Tenth Circuit has used six factors, which the parties argue should be applied here. These factors, known as the *King of the Mountain* factors, are (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1239 (Fed. Cir. 2013) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)). These factors are non-exhaustive, and depending on the context of a particular case, "certain facts [may be] more probative . . . and dominate the analysis. *Id.* at 1243.

The district court considered the *King of the Mountain* factors individually and as a whole, and it determined there was no genuine issue of material fact as to likelihood of confusion. We do not see any error in the district court's conclusion. There is no dispute that customers are sophisticated and select BRBs through a bidding process. Given the admitted care that customers will exercise in reviewing materials related to the bids and selecting BRBs, as well as the absence of evidence of actual confusion, we agree that no reasonable jury could conclude that there was a likelihood of confusion. Accordingly, we affirm the district

SME STEEL CONTRACTORS, INC. v.                    19
SEISMIC BRACING COMPANY, LLC

court's grant of summary judgment to SME Steel on SME Steel's claims of false association.[9]

### III – Copyright Damages

Finally, SME Steel challenges the district court's grant of summary judgment to Seismic Bracing on SME Steel's copyright claim.  The district court determined that SME Steel had not presented sufficient evidence of actual damages because it had not shown a causal connection between the alleged infringement and any subsequent purchases of Seismic Bracing's BRBs. *Decision* at 1219.    Under 17 U.S.C. § 504, "an infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages."  For copyright damages, "the plaintiff can recover either on its own damages or on the infringer's profits." *I Dig Texas,* 98 F.4th at 1007.

Here, SME Steel admits that it only sought actual damages, not statutory damages, and that it was entitled to indirect profits representing the benefit derived by Seismic Bracing as a result of infringement. *See* Appellants' Br. 87–88.  To show indirect profits, the copyright holder bears "the initial burden to show a nexus between [the alleged] infringement and making of a profit," and [t]hat showing must go beyond speculation." *I Dig Texas*, 98 F.4th at 1007–08 (citations omitted).

---

[9]    SME Steel also challenges the district court's grant of summary judgment under § 13-11a-3(b), (c) of the UTAA. The parties agree these claims rise and fall with our determination on the Lanham Act claims. *See* Appellants' Br. 81; Appellees' Br. 71.  Because we affirm the district court's grant of summary judgment on the Lanham Act claims, we also affirm the district court's grant of summary judgment on the UTAA claims.

The district court properly concluded that Seismic Bracing was entitled to summary judgment on SME Steel's copyright claim. SME Steel's copyright damages contention, on which SME Steel bears the ultimate burden, was based only on speculation, which is insufficient. *See I Dig Texas*, 98 F.4th at 1008 (affirming summary judgment of no infringement where holder had not shown a nexus between profits and infringement where it only showed that copyrighted photographs were included in alleged infringer's advertisements, but did not present any evidence that infringer sold any more products because of the use of copyrighted photographs). While SME Steel argued that some of the companies who received the Design Manual later purchased BRBs from Seismic Bracing, SME Steel does not dispute that it failed to present any evidence that the companies' purchase decisions were related to the use of SME Steel's copyrighted material.

## IV – Evidence of Damages

Finally, SME Steel argues that summary judgment was inappropriate for its Lanham Act and Copyright claims because the district court refused to allow SME Steel to gather evidence of damages through third-party subpoenas. During discovery, the magistrate judge issued an order on a motion to quash, which prohibited the parties "from serving document discovery or deposition subpoenas upon any third party pertaining to any open bid," J.A. 104, in situations where SME Steel and Seismic Bracing were submitting competing bids.

SME Steel failed to preserve its argument for appeal. SME Steel did not appeal the magistrate judge's order to the district court as required under the prevailing protective order and Rule 72(a) of the Federal Rules of Civil Procedure, nor did it argue at summary judgment that relevant facts were unavailable under Rule 56(d). SME Steel accordingly forfeited its argument on third-party

subpoenas.  *See Sinclair Wyoming Refining Co. v. A & B Builders*, 989 F.3d 747, 782–83 (10th Cir. 2021) (summarizing cases holding that forfeiture applies when a party fails to object to a magistrate judge's non-dispositive order); *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1226 (10th Cir. 2017) ("A nonmovant failing to raise the evidentiary impediments preventing it from meeting its summary judgment burden acts at its own peril.").  Moreover, contrary to SME Steel's argument that it was "prevented from discovering evidence of damages," Appellants' Br. 90, discovery was not prohibited for closed bids, and the order permitted a party to approach the court for a variance if bids were still open near the approach of the close of discovery. *See* J.A. 104–05.  The restrictions on disclosure did not constitute an abuse of discretion.

## CONCLUSION

We have considered SME Steel's remaining arguments and find them unpersuasive.  For the foregoing reasons, we *affirm* the district court's grant of summary judgment.

**AFFIRMED**